## NUNC PRO TUNC

AUG 12 2008

Craig Smith
1631 Pentecost Way #7
San Diego, CA. 92105

In Pro Se



FILED

AUG 1 5 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CRAIG SMITH | ) | |
| Plaintiff | ) | Civil No. 3:07-cv-02077-BTM-RBB |
| | ) | |
| VS. | ) | Superior Court No. SCD195342 |
| | ) | |
| DAN LINK, Deputy District Attorney, | ) | Relief from Judgment or Order |
| NICHOLAS GONZALEZS, San Diego Police Officer,) | | |
| CITY OF SAN DIEGO, | ) | |
| COUNTY OF SAN DIEGO, | ) | |
| Defendants. | ) | Date: August 8, 2008 |

Comes now this 1st day of August 2008, the plaintiff has satisfied the heck rule for the conviction in hand is now terminated in favor of the plaintiff. The Court of Appeals, Fourth Appellate District of case # D049993 reversed in full the Judgment and conviction of Superior Court County of San Diego case no. SCD195342 on March 5, 2008 and it became final on May 28, 2008, as the Remittitur was issued that day, subsequently a hearing was held on June 16, 2008 in Superior Court County of San Diego and the Case was dismissed based on the remittitur issued by the Court of Appeal and the People's motion to dismiss. The Plaintiff has also has also removed a claim against Superior Court Judge Albert Harutunian III for he has absolute immunity, but has remain the other defendants for circumstances of Dan Link and Nicholas Gonzalez's are only granted qualified immunity as it is Dan link is a County officer for the County of San Diego and Police officer Nicholas Gonzalez's is a City of San Diego employee.

The Plaintiff asserts that the County and the City of San Diego is parallel in responsibility for the wrongful conviction and 799 days of wrongful/false imprisonment.

### STATEMENT OF THE CASE

On December 1, 2005, The plaintiff went to Etta's Bar to shoot pool "billiards", he arrived at approximately 9:30 pm and had nothing to drink prior to arriving, he was challenge to a game of pool by a person he did not know, now known as Alephonsion Deng, the plaintiff won the first game and Deng bought the plaintiff for losing the game the second game the plaintiff ran the table but scratch on the eight ball< Deng still insisted to buy a drink, which was the plaintiff's second standard drink " screw driver" which is vodka and orange juice, Deng started arguing with the bartender Lydia and then he started arguing with the plaintiff, Deng was escorted out of the bar by Lydia for as she had testified Deng

was belligerent with other patrons before the plaintiffs arrival, when the plaintiff left the bar at approximately 11:10 pm, Deng was outside waiting and grabbed the plaintiff by his shirt and begin striking him hitting him in the eye, of which Deng 24 years old and the plaintiff at that time was 44, the plaintiff was able to get Deng off him and had got Deng on the ground several times, Deng verbally upset over the age difference was resilient and kept coming back even though he was losing, the plaintiff knowing the age difference was trying to get away for stamina purpose's , and was able to get in his car and drive away with Deng lastly on the ground, the plaintiff was heading home and stopped at a stop sign at about 11:25 pm, not knowing Deng was actually following him, at the stop sign the plaintiff notice a car in his rearview mirror approaching very fast, and tried to step on the gas to get out of the way but it was too late, the plaintiff then conclude that it was Deng, Deng crash his car into the plaintiff at that stop sign some mile and 1/3 away from Etta's at a speed of 35 to 40 mph, the plaintiffs car was spun around and Deng's car was stopped about 30 feet away, feeling threaten by the fact of Deng had attacked him and then used his own car to ram into myself, I felted this guy is seriously trying to hurt me, to damage his own car like that and maybe he might have a gun or something, I was shaking and leary about getting out of the car tried to get the car to move it would not, The plaintiff had purchased a bottle of brandy and seven up on the way to Etta's, grabbed that bottle and pour almost all of it in a coffee cup and tried to drink all of it trying to calm his-self and build up the nerves  to get out of the car of which he felted like a target sitting in the car, I then grab the keys got out of the car and quickly left the scene, but returned after about five minutes after another vehicle with two people in it approach and said something like I saw the whole thing man he creamed you, the plaintiff stood on the corner of the accident pacing and smoking cigarettes, I never approach Deng's car to confirm it was him, but I didn't want to for I felted this guy is crazy and I was not going over there, at about 11:50 the San Diego police arrived Officer Gonzalez's

The effect of the alcohol was increasing due to the large volume at one time; the following includes Officer Gonzalez's report to account for all actions. Officer Gonzalez's arrived and ask what happen, I informed him that the other vehicle had hit me while I was at the stop sign, he asked was I hurt or injured, and in his report he stated I seemed a bit disoriented, but at that time he attributed my behavior as a result of being rear-ended. He then ask for my identification, as I look for my California driver license, he notice a Missouri ID and ask for that, he then went to his vehicle and ran a check on me, and somehow misread my California driver license as being suspended, when he returned he ask if I had insurance, we walked to the car and I gave him the Insurance when I noticed a spill on the front passenger seat, he ask what was that spill, I told him it was probably the alcohol I had, he then went and talked with the officer on the scene who had been with Deng, he came back and asked did I have a fight and I said so it is him, he then ask me about the events of the night leading up this point, I explain about the fight and the alcohol and when I had consume it, he then initiated a field sobriety test afterwards place me under arrest, he then stated in his report he checked the car and found the 16oz cup with about 20% remaining in the back seat area sitting on the floor upright, I was then transported to the station and a breath intoxilizer was performed were upon my increasing bac. Was a .17, he then stated he did a records check at the station and it revealed I was on parole. He submitted a report to his supervisor that what initiated the probable case was that my drivers license were suspended, he then later testified in trial that my license's were suspended, and he had submitted a report stipulating they were suspended and that was the cause of his arrest, but after he was proven that he was not telling the

truth under oath and my licenses were valid, this report disappeared and the now report has no mention of suspended license.

On December 2, 2005, plaintiff was arrested and detained and on December 20, 2005, information was filed charging plaintiff with two counts involving a single incident of allegedly driving under the influence of alcohol. Count one charged with a violation of Vehicle code section 23152, subdivision (a), driving under the influence of alcohol, and count two charged with a violation of subdivision (b), driving with a blood alcohol level in excess of .08. Both counts were charged as felonies based on an allege prior of which the plaintiff has filed a motion to vacate on that prior and is currently still in court.

Plaintiff first trial by jury concluded on February 17, 2006. The jury acquitted plaintiff of count two – driving with a blood alcohol level in excess of .08 – but was unable to reach a verdict on count one. A mistrial was declared as to count 1, Dan Link was the prosecuting attorney as Nicholas Gonzalez's is the arresting officer, the people refilled and the second trial began on April 11, 2006. Upon argument the second jury would not know about the acquittal and any reference was to be referred as a prior hearing, The defense filed a number of in Limine motions, notably one to exclude any evidence that plaintiffs blood alcohol level was approximately .17 sometime after the arrest and to preclude instructing the jury on the rebuttable presumption that a person with that level is presumed to be impaired for purposes of operating a motor vehicle , specifically when it was proven by jury that the plaintiff did not operate the vehicle with a blood alcohol level of .08 or greater, These motions were denied upon Dan Links objections . On April 16, 2006, plaintiff was convicted of count one. And on June 16, 2006 the plaintiff was overreached by the court about bifurcation and did not know what was really happening, I presume it was to say had I ever been to jail before, but I didn't know it was a hearing to enhance the conviction.

Plaintiff was sentenced on October 30, 2006. The prosecution "Dan Link" submitted a Statement of Aggravation base on numerous alleged prior conviction that were simply not true, more specifically two Arizona Dui convictions that the plaintiff has no DUI convictions in Arizona, a 1993 felony DUI conviction, which the Plaintiff did not have a felony 1993 conviction and a 1998 felon in possession of a firearm, which was also untrue, These fabricated convictions were utilized to enhance. The plaintiff during the course of sentencing denied any Arizona convictions, denied a 1993 felony DUI and denied a 1998 Felony conviction. The plaintiff also stated that his prior conviction out of Santa Clara County in 2000 was invalid and he will be challenging that conviction with a motion to vacate. The court sentenced the plaintiff to the upper term of 3 years based on the numerous false prior convictions s that Dan Link submitted as prosecution in his statement of aggravation and a one year prison prior of which the court stated the plaintiff admitted to the prison prior and the plaintiff was insisting he had not admitted to anything, this was the overreached of June 16th, the sentence was for a total of 4 years. When the court selected the upper term, the court did not specifically cite either plaintiffs prior conviction or a parole status but simply selected the upper term, custody and conduct credits were applied, the plaintiff was in custody from December 2nd, 2005 until August 11, 2006 upon which he made bail that day, and then he was again in custody after sentencing on October 30th, 2006 until April 26, 2008 which he was released on parole, the total actual time in custody was 799 days.

On December 6th, 2006 the plaintiff filed an appeal in the Superior Court, and on February 2nd, 2007 it was filed in the Court of Appeal Fourth District Division One, "case no D049993", while the appeal was still pending on October 23, 2007 the plaintiff filed and commenced a civil action suit in the U.S. District Court Southern District to prevent from being time barred by California's civil code 340 upon an action must commenced within one year of judgment. On March 3, 2008, the U.S. District Court Southern District dismissed the action for failing to state a claim and for some immune defendants, more specific due to the heck rule of which the conviction had not terminated in my favor. On March 5th, 2008 the Court of Appeals Fourth Appellate District reversed in full the conviction of Superior Court, case # SCD195342, the reversal was mostly based on violation U.S. Constitution rights of the 5th Amend. Collateral Estoppel "Double Jeopardy". Jury instructions reversible error, and as for the sentencing enhancements under Cunningham v. California (2007) 549 U.S. (127 S.ct. 856, 860) and the alleged false prior convictions, the court asserted given the reversal of the judgment as to guilt, we need not consider his sentencing, as the statement of aggravation by the Dan link was considered to be reverse by the court also, without detailing the briefs , for the Opening brief and the Respondents Brief both asserted claims of the sentencing . On March 28th 2008 case no. D049993 was published and on May 28th, 2008 the opinion of the reversal be came final and the remittitur was issued and on June 16th, 2008 in Superior Court County of San Diego case no. SCD195342 was dismissed as the People's motion to dismiss was granted

Due to the time of incarceration in custody the plaintiff also after being employed under contract loss two jobs as a UNIX System Administrator, loss personal property and creditability for employment and been extremely damaged.

### STATEMENT OF RELIEF

This Relief of Judgment is based on when the plaintiff commenced this action it was dismissed while the Appeal of his criminal conviction was still pending, but the Plaintiff initiated the action to not be time barred under California civil code 340 that an action must commenced within one year after judgment, and the conviction had not yet terminated in his favor, but now the criminal conviction has terminated in his favor, this filing is under Federal Civil Rule 60. Relief From Judgment or Order (5). The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or, also new evidence that could not be discovered until after the transcripts were available.

### COURT OF APPEALS FOURTH APPELLATE DISTRICT DIVISION ONE
### THE DECISION "PUBLISH" "D049993"," People v. Smith (2008) 161 Cal.App 4th 622"

The case was publish on March 28, 2008 and became final on May 28, 2008, although the plaintiff asserted to Appellate Attorney Christopher Blake to raise issues on the initial probable cause for arrest and to also the issue of violation of the 6th amend. Right of impartial jury, Wheeler motion, attorney Blake insisted that this would delay the appeal, trying to get the transcripts and that he had good grounds that maybe sufficient, therefore the Court of Appeals were only presented with the issues starting from the second trial with the jury.

---

**The Court:**

In the first trial, the jury acquitted Smith of driving with a blood alcohol level of .08 or more (Veh. Code section, 23152, subd. (b), hereafter sometimes referred to as "per se DUI"), but could not reach a verdict as to whether he drove under the influence of alcohol (23152, subd. (a), hereafter sometime referred to as "generic DUI"). At the second trial, the jury convicted Smith of driving under the influence of alcohol.

Challenging this conviction on appeal, Smith argues that at the second trial the court violated collateral estoppels principles by: (1) admitting the evidence that he had a post accident .17 blood alcohol level; (2) instructing the jury that a .08 or more blood alcohol level creates a permissive presumption of driving under the influence; and (3) failing to instruct the jury that it should presume he did not drive with a blood alcohol level of .08 or more. We reject Smith's argument that the .17 blood alcohol evidence was inadmissible. However, we conclude that based on the interrelationship between the generic and per se DUI offense, collateral estoppels principles were violated when the second jury was permitted to consider the issue of whether Smith drove with a .08 or more blood alcohol level. Moreover, we agree with Smith that the jury should not have been instructed regarding the permissive presumption arising from a .08 or more alcohol level should have been instructed to presume his blood alcohol level was less than .08 while driving. We conclude the error requires reversal.

Accordingly, at the second trial the prosecution presented its case with no restrictions arising from the jury's acquittal, and the jury was instructed that it could infer that Smith drove under the influence of alcohol if it found the prosecution proved he had a blood alcohol level of .08 or greater (See section 23610; judicial Council of Cal. Crim. Jury Instns. (2007-2008) CALCRIM No. 2110.)

At the second trial the prosecution had to prove impairment as a result of alcohol consumption.

**(Note: the prosecution presented no evidence of impairment .The second trial was initiated by Dan Link as an act of malicious prosecution, after the acquittal there was no proof of a violation of subd. (a) only a initial strategic plan by Dan link that violated the Double Jeopardy clause, at pre-trial before a jury was impaneled Dan link took what known to be true, (the plaintiff did not drive a vehicle with a blood alcohol level of .08 or more) and implied that it was false, he therefore in his initial act he fabricated the evidence of the acquittal and use it in trial which resulted in a loss of liberty)**

**Court:**

The whole purpose of the second trial was to determine whether the prosecution could prove "drunk driving" under the impairment theory, and to do so without relying on the .08 blood alcohol level finding rejected by the first jury, and without the benefit of the inference of impairment attendant to such a finding.

The erroneous failure to preclude the second jury's consideration of the .08 issue was prejudicial under any standard of review [harmless beyond reasonable doubt standard for federal constitutional error]. Because a finding that the defendant drove with a .08 or more blood alcohol level carries such a strong inference of driving impairment and the jury was expressly instructed regarding this inference, there is a reasonable probability that had this theory been foreclosed, the second jury would have reached a different verdict.

The Plaintiff requests that if the court deems a defendant has qualified or absolute immunity that the remaining defendants may not be dismissed

**Count1: the following civil rights has been violated: 4th amend,14th amendment, 5th amendment, deprive of liberty, without due process of law, false arrest, malicious prosecution, false imprisonment**

**Court transcripts April 12th, 2006 volume 3, page 90;**

in court Dan Link under his power as County officer, Constitution of California art.X1, sec. 4,1, designates arresting officer Nicholas Gonzales as his investigating officer, therefore arresting officer Gonzales is in a investigative role and it is more likely before the official appointment in court he was acting in an investigatory role, and was the act of an Policy maker for the County, as a County officer, which gave Officer Gonzales jurisdiction to investigate beyond the limits of the City of San Diego, but either way he is now tainted as a arresting officer against the defendant whom will testify against the defendant to support his arrest.

The fact that he caught fabricating evidence in the first trial submitting a false report to his supervisor that initiated the prosecution and even committed perjury in preliminary examination by testimony stating that the defendants California drivers license were suspended, he stated that he check his computer in his car and found that the plaintiffs driving license were suspended and that was the reason he began to question the plaintiff, for he had never observed any driving element and the plaintiff was the victim of the other driver who ran his car into the plaintiffs the other party Alephonsion Deng, who had attack the plaintiff at Etta's bar in a fight after getting kick out of the bar , then followed the plaintiff and crash into the plaintiffs car at a stop sign at a speed of 35 to 40 mph

And the plaintiff had a bruise eye which was reflected in the booking photo, which no assault charges were ever filed against Deng, but he was convicted of DUI from that night in June Of 2006 after the plaintiff was convicted in the second trial, he was granted immunity to testify in the first trial against the plaintiff. The City Attorney Office of San Diego is currently in process of getting victims reimbursement for the plaintiff as the plaintiff was a victim of a crime.

It was proven in the first trial that the consumption of alcohol was after the driving element, which the officer never observed; the only probable cause would have been for drunk in public. As prosecution presented no evidence of how well or how poor the plaintiff was driving that night.

The fact that officer Gonzales first stated that the initial probable cause was the fact that the plaintiffs California drivers license were suspended in his report to his supervisor and then in the first trial his testimony was the same that the licenses were suspended..

It is clear that officer Gonzalez fabricated his report for probable cause to fit a conviction for in the pre-lim of the first trial he testified that he submitted a report that the plaintiffs license's were suspended , and in trial under oath his testimony was that the license were suspended, the report has a date of 12/02/05, but has a printout date of 12/06/06,  and some of the report has a 12/16/06 date, but pre-lim was in January of 2006,  and he testified about the suspended licenses in February of 2006, but the

report as of now has no mention of a California drivers license being suspended, it is clear it has been modified at what point who knows but also in **Courts transcripts April 12, 2006 volume 3 – page 155, 156, 157,** he is question by defense lawyer Greg Turner under oath his testimony that my California license were valid and he admits that in February he testified that they were suspended and admitted it was an error on his part

And in more questioning as illustrated by Turner

**Q. and at the hearing in February, did I ask you the same line of questions?**

**A. I do remember a question in regard to his license.**

**Q. and at that time, did you indicate that you ran his license and it came back as suspended?**

**A. I recall that, yes**

**Q. but that's since been shown not to be true?**

**A. that's correct**

**Q. that at the time you said in court that his license was suspended, that you checked and it was suspended, that was an error on your part?**

**A. it was**

**Q. you actually had not checked to see whether - - either you had checked to see whether the license was accurate or valid and it was valid and you just misrecalled?**

**A. correct. It was not relevant to this case, so I didn't note it in my report, so that's why I didn't note it, because I didn't think it was relevant to the case.**

**Q. it was not relevant, so you did not note it in your report. But yet, you testified to it sometime later?**

**A. yes, I was in error in saying that his license was suspended**

Therefore officer Gonzales fabricated evidence and forwarded the evidence to a prosecutor (who use it against the plaintiff until proven wrong, but at this point officer Gonzales has already initiated a false report for probable cause and the prosecution has begun and the ending result was a deprivation of liberty for the plaintiff was convicted and sentence and serve a 4 year sentence and as it is now you can not find a report that states a suspended license so the report has been change , for such actions he enjoys only qualified immunity and he has violated civil rights of which immunity is lost.

He later changed the probable cause to the field sobriety test and stated I stop my vehicle by being involved in an accident, but this is after the report of suspended license had been removed from the report and it is document that the plaintiff was stopped at a stop sign and was not the cause of the traffic incident

To confirm that the report disappeared and was modified without notice and Officer Gonzales fabricated the evidence in **Court transcripts April 12, 2006 volume three, page 181,182** in trial questions from defense attorney Turner and answers by Officer Gonzales.

**q. You are free to produce supplemental reports; is that correct?**

**a. I am.**

**q. And a supplemental report is something you produce if there's follow-up investigations?**

**a. True**

**q. Or something that you produce if something occurred to you, a material omission in your report?**

**a. Yes.**

q. You did not produce a supplemental report in this case, did you?

a. I did not, no

q. So at the time you submitted this report to your supervisor, in your opinion, it was as complete, thorough and accurate as it needed to be?

a. "after objection was overruled" to the best of my ability, yes, it was.

q. But now we know there are exchanges or statements or facts that are not in this report?

a. Correct

In Court transcripts of April 12th 2006 page 145, another questioning g about Officer Gonzales error of suspended licenses that he testified to in the first trial

In Court transcripts of April 12th page 152 another incident of officer Gonzales under oath giving a different version practically fabricating evidence in his report and prior testimony at the pre lim of which initiated a prosecution to support a conviction by now stating after that the cup was wedge against items and that is why it still stood upright after the impact of the car crash as before he testified it was just sitting on the backseat floor. Prosecution Dan Link use this fabrication in trial and the ending result was a deprivation of liberty as it was his testimony has been inconsistent and as change throughout both trials as illustrated in" court transcripts of April 10[th], volume one, page 25", he also admitted he had never described the splash marks as forward or fan shaped until the second trial.

Officer Gonzales mislead the court on the basis of probable cause with a material omission, and testimony, intending to enhance the contents of the affidavit in support of probable cause, after the acquittal of section (b) of 23152 the trial was begun without probable cause and was the product of malicious prosecution.

Therefore it is without a doubt that Officer Gonzales Police report was altered and fabricated and his testimony at pre lim of which initiated the prosecution, such acts does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution. Officer Gonzales is an employee of the City of San Diego and has an average of 3 DUI's arrest a year at that time, rather or not there may be training issues, his actions are approved and authorized by the City of San Diego.

Count 2: The following civil right has been violated: 6th amendment right to an jury of his peers, impartial jury, 14th amendment, 4th amend.,derive of liberty without due process of law, malicious prosecution,

District Attorney-"Dan Link", after the first trial admitted in his investigative capacity that he had spoken to a juror of the first and he use this in a pre-trial hearing

From **Court transcripts April 10, 2006 volume one, page 13** Dan Link admitted he in his investigative role spoke with a prior juror from the first trial for which such as act he doe not enjoy absolute immunity, only qualified immunity in his words he stated " if anybody has as much insight into the jury, it's probably myself who has actually spoken to a juror who already told me that in order to get to the "A" count, there were several jurors that just conceded the "B" count because there were four difficult jurors who refused to listen to what was going on and would not move their position . The court stated informal contact with jurors is not appropriate,

In pre-trial of the second trial on or about April 6th, 2006, Dan Link in open court after he had spoken with a white female juror from the first trial upon his investigation she informed him that the 2 black jurors in the first trial stated they would not convict the plaintiff of anything , he stood up stated how do we know if these two jurors did not influence the rest of the jury not to convict the defendant, I immediately said to defense counsel "Turner", that's a racist statement and to object, which he did, the Judge issued a out of the room sidebar, when defense counsel Turner came back 5 minutes later, he said the Judge is allowing it. In the subsequently following jury selection, Dan Link was ensuring no Blacks to be on the jury, whenever a Black would get to the panel, he systematically use his peremptory challenges to eliminate them 3 in total, defense had selected the last Black potential juror for the panel, defense counsel "Turner ", said he is going to remove the last Black potential juror, I told Turner he's making sure no Black on the jury, this is racist, do something, which Turner did, a sidebar outside the court room when Turner came back, again he said the Judge is allowing it, then for sure Dan Link continued his systematic exclusion of Blacks used his peremptory challenge and removed the last potential Black

Therefore Dan Link in his initial investigative capacity spoke with a juror, which is also against California Court rules 520, this act was not of an advocate preparing for prosecution it was an investigative act which is only qualified immunity, he then from his investigation in his act of malicious prosecution violate my 6th amendment right to have a jury of my peers and the result s were a loss of liberty

**Count 3: the Following civil right has been violated: 4th amend, 14th amendment, 5th amendment, deprive of liberty, without due process of law, false imprisonment, 5th amendment Double Jeopardy**

Supporting Facts:

It was clear Dan Link fabricated the evidence of the acquittal for no law support it under California constitution and federal constitution, the principles of collateral estoppel have long been establish. His actions were of a vindictive prosecution after losing the first trial and he will win the second trial no matter what violations he did.

In court transcript April 10, 2006 volume 1 page 14, before a jury was selected, after defense attorney Greg Turner had file motions to outright dismiss the case, and also declaring to proceed would

be double jeopardy and motion to suppress the evidence. Dan link confirm his intentions by stipulating that the blood alcohol level of .17 is a relative piece of evidence to prove under the influence, this reflected his well plan strategy. Dan Link was well aware of the acquittal for he was the same prosecutor in both trials, and he knew by that verdict it was determined that I drank the large quantity of alcohol after the collision for testimony only supported two drinks at Etta's Bar, and all evidence was to the fact that I was sober upon arriving at the bar at about 9:30 pm and did not have any drinks prior, by testimony of brother Kenneth Smith and Bartender Lydia Salvage, no other evidence differ and the plaintiff left the bar at about 11:18 or so and the collision happen at 11:25, Dan Link devised a artifice to mislead, deceive, the jury with his malicious acts of prosecution with no regard with violating any civil rights, this is even further then below, for in the Court of Appeals throughout the Respondent brief, the prosecution continue to insist that the plaintiff did drive over the limit of .08, this is also proof that from the beginning the intentions were to fabricate what was true to be false, and for the jury instructions and the sentencing based on the false allegation they concede if true, it was harmless error, how can violating the Bill of rights be harmless error when it was the initial act of fabricating evidence


Court transcripts April 10, 2006, volume one, page 18. The court addressing the double jeopardy issue, and the acquittal of subd. (b) The court states the verdict stands for. I t stand for a decision by a jury that the prosecution had not proven beyond a reasonable doubt of a blood alcohol level of point .08 or greater at the time of driving.  Saying that it had not been proven beyond a reasonable doubt is not a finding that it was less than point .08

Ct transcripts April 10, 2006, page 27. I would grant the people motion to preclude reference to the prior trial in this matter as a trial and to preclude reference to a prior acquittal on the "B" count or the existence of a "B" count. Dan Link suppress evidence that was favorable to the plaintiff, which is a "Brady" violation and violates due process again before trial. The plaintiff has a right to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial


Court transcript; April 12th , 2006 volume 3, page 127, Dan Link questioning Officer Gonzales on the stand in trial, disputing and again reiterating an issue that was decided in the prior trial.
Q. at any time during your contact with the defendant, specifically, when you were asking him questions, did he say "I drank a Bunch of Brandy after I was collided into"?
a. He did not
But this issues was decided by jury in the prior trial that I did drink a large quantity of alcohol after the collision, disputing the fact that I drunk a large quantity after the collision is saying that I made this up and my blood level of .17 is accountable for that I did drive with a blood alcohol level over .08

Court transcripts April 13th, 2006 volume 4, page 210, Dan link questioning with peoples witness alcohol expert Frank Healy
q. Thank you. Now, assuming that this is the test for the defendant, in which the numbers match up, what does it show the defendant blew on that particular day?
a. It shows the defendant's breath alcohol result was point 17 percent.
q. And what does that mean to you, if anything?

a. Well, that's a significant number in terms of impairment. That's more than twice the legal limit. And this person, at the time of the test was impaired.

   With in mind that the jury instructions was to the effect that if prosecution has any proof that the defendant blood alcohol level was a .08 or greater you may conclude he was under the influence, and the fact the acquittal was not to be known and no instructions indicated by the way you must conclude he was not driving at a bac over .08 he continued this line of question up to page 215.

   On page 242 still with the same witness

q. So somebody who, in an an hour's period, who exhibited this same outward physical signs consistently throughout that hour's time, that would not be consistent with the scenario of rapidly drinking 12 ounces of alcohol, according to your last statement

Page 297, Dan Link questioning the bartender Lydia Salvage she had testified in the first trial and the second trial the defendant only had two well drinks,

q. You don't know how many drinks the defendant had before he got to your bar that evening; correct?

a. No. He had two in the bar

q. Once again, you have no idea how many drinks the defendant had before he got to your bar?

a. No

   Court Transcript April 14th, 2006, volume 5, page 400, in discussion with the Judge, defense Counsel Turner, and Dan Link prosecution, prior to in front of the jury.

   As vehicle code 23610; states

1) If there was at that time less than 0.05 percent, by weight, of alcohol in the person's blood, it shall be presumed that the person was not under the influence of an alcoholic beverage at the time of the alleged offense.

Due to fact in the first trial it was concluded with the evidence and testimony that the defendant only had two drinks prior to driving in a two hour span, and with alcohol expert testimony of a burn off rate of .02 per hour for a person the defendant size 5/11 200 pounds, which would put the defendant under .04 or even .02 at the time of driving.

The court: the bench notes for 2110 include the following: the statue also creates a rebuttable presumption that the defendant was not under the influence if his or her blood alcohol level was less than point 05 percent. And it cites people versus Gallardo. Depending on the facts of the case, the defendant may be entitled to a pinpoint instruction on this presumption. It is not error to refuse an instruction on this presumption if the prosecution's theory is that the defendant was under the combined influence of drugs and alcohol.

Mr. Link: And based on that bench note your Honor can clearly see that we are not going with the theory that he was under the influence at about point 05 or less nor are there any drugs involved in this case

Page 402,

Mr. Link: Our theory here is that he had been drinking the whole time.

   Also confirmation that Dan Link was refusing to accept the acquittal, and strongly fabricating what was proven to be true by the acquittal, is false, this also confirms his well strategic plan to fabricate the

evidence which he initiated before trial to commit double jeopardy keep the jury from knowing about the acquittal and even a first trial and use the blood alcohol level of .17 as a presumption factor to convict on the subd. (a) with the jury instruction that if they have any evidence of the blood alcohol level. Was over .08 they may conclude he was driving under the influence. He just didn't just come up with that theory it was his theory from the beginning

In court transcripts April 14th, 2006, volume 5, page 446, Dan link is questioning me the plaintiff,
q. isn't it true you came up with this excuse that you drank afterwards in order to get out of driving under the influence?
a. no.
    Then on page 447,
q. The fact of the matter is you never told the officer at the scene that you drank after the collision?


From CT April 14th, 2006 volume 5, page 519, 520 in closing argument Dan Link elaborates strongly on if the prosecution present proof that the defendant's blood alcohol level was .08 or more you may infer the defendant was under the influence of alcohol, he then goes into how strongly the legislature is about these numbers and he elaborates that I was double over that limit, this also confirms that Dan link in presenting the evidence of the blood alcohol level of .17, he was not presenting this evidence to suggest that the defendant was not over .08 but may have been under the influence after the two drinks, this was telling the jury we have proof that he was double over the limit and legislature did not come up with these numbers it was carefully reviewed , and this is proof the defendant was driving under the influence, by these statements he was confirming that he never intended to abide by the acquittal of the .08,  he took what was true ( The acquittal of subd. (b) by jury) and implied it was false, he therefore fabricated the evidence of the acquittal as he initiated in pre-trial and throughout the trial and even in his Respondent Brief in the Court O f Appeals that the acquittal only means that he didn't prove it to that jury beyond a reasonable doubt, but that doesn't mean I was not driving under the influence with a blood alcohol level of .08 or more, he just didn't prove it to that jury in the first trial, and even if the court allowed him to proceed, this was clearly malicious prosecution with fabricated evidence and a violation of civil rights of Double Jeopardy that resulted in a loss of liberty, see "Zahrey v. Coffey", 1996 and 2000, in the United States Court of Appeals for the Second Circuit , for a prosecutor it has been establish since 1996 that a prosecutor who fabricates evidence and then use it and the ending result is the defendant is deprive of liberty, that absolute immunity is not granted.

## SENTENCING AND FABRICATING EVIDENCE

On the day of sentencing October 30th, 2006, which is a different phase and different hearing then trial, Dan Link in acting in an investigative capacity, for it had to be investigative for he produced a statement of aggravation that was full of false allegations and his testimony were of false allegations, for he provided no proof of his allegations. The court sentenced the defendant to the upper term of three years and a one year prison prior based on the reports and testimony provided by Dan Link,
  (Noted: The plaintiff in sentencing denied all the allegations presented by Dan Link)

The statement of aggravation Dan Link submitted alleged in specifically the false ones were that the plaintiff had two Arizona DUI conviction and he provided no proof of it, and the plaintiff do not have any Arizona DUI convictions, then he submitted that the plaintiff has a 1993 felony conviction which the plaintiff does not have, the plaintiff also insisted to the court that his prior conviction of 2001 was in dispute for being invalid, Link also stated a 1998 felon in possession of a firearm conviction, which the plaintiff has no 1998 felony conviction.

In Court transcripts October 30, 2006 volume 8, page 606, the defense had argue that it never received a statement of aggravation, it was determine that Dan link had sent the copy of the statement to Greg Turner whom had been dismissed in court with Link present after the second trial conviction on June 16, 2006, and it was never sent to Pacific Law Center whom was defense counsel.

On page 613, Dan Link testimony is "this defendant, based on his three prior felony convictions "
In 1993 the plaintiff in a wobbler case was sentenced to 12 months county jail, 6 months of it in custody and 6 months in a sober living program a house in the community with other residents some who were court ordered and some not, just a sober living environment, no probation officer and pre-sentence investigation and report was waived, the plaintiff was on court probation for three years, as indicated on the change of plea, criminal minutes, which is summary probation and since Assembly bill 3091 (stats. 1982, ch. 247) is a "Conditional Sentence" a sentence under California Pen. Code 17 (b), (1), a misdemeanor, there was no special circumstances for the plaintiff not to report to a probation officer if the court had intended, but there was a clerk prepared report that erroneous cited Formal Felony probation, but this was known to be an error, for their was no formal probation and their was no felony probation, and the plaintiff had noted to the court this is why is 2001 conviction was invalid. For there was no 1993 felony conviction.
And on page 624 of the transcripts Dan Link testifies "that the defendant in 1993 was sent to some sort of camp – a fire camp, but it was still considered prison". No prosecutor would not know reasonably beyond a doubt the difference in a change of plea criminal minutes the difference of Summary probation and what is clearly cited as 6 month in a sober living program to be a prison camp, you need to be committed to the Department of Corrections to go to a prison camp, you will receive a CDC #, and will be documented as for the felony commitment, you will have a parole officer upon release of the prison camp, " None of this exist in an advocate role as a prosecutor he would prepared from what is known are what is documented to be known, but once he observed the documents and fabricates what is not even close to what is on the document in such a strong nature where there is no doubt and it clear he is not acting as an advocate role, he is in a investigative role as a complaining witness and he then uses this fabrication that results in a loss of liberty for enhancing the conviction to more years in prison of which the conviction has been reversed and dismissed, it is clear he is not granted absolute immunity and his immunity is loss for such actions.

In the 1998 case for Possession of a firearm, it was originally charge as a felon in possession of a firearm, due to that erroneous report by the court clerk in 1993, but the Plaintiff was willing to go trial in fighting that it was a misdemeanor as the court intended in 1993 and that erroneous report was not the

| | |
|---|---|
| The plaintiff is seeking monetary damages | $ 300,000 |
| Under California compensation | $79,900 |
| Loss of employment | $154,000 |
| Intentional Infliction of Emotional Distress | $50,000 |
| Punitive | $80,000 |
| Total | |
| | $663,900 |

I Craig Smith declare under the penalty of perjury of the laws of the state of California that the foregoing is true and correct, executed this 8th day of August 8, 2008 in San Diego California

Craig Smith

8-10-08

Craig Smith
1631 Pentecost Way #7
San Diego, CA. 92105

In Pro Se

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CRAIG SMITH | ) | |
|            Plaintiff | ) | Civil No. 3:07-cv-02077-BTM-RBB |
| | ) | |
| VS. | ) | Superior Court No. SCD195342 |
| | ) | |
| DAN LINK, Deputy District Attorney, | ) | Relief from Judgment or Order |
| NICHOLAS GONZALEZS, San Diego Police Officer,) | | |
| CITY OF SAN DIEGO, | ) | |
| COUNTY OF SAN DIEGO, | ) | |
|            Defendants. | ) | |

Date August 8, 2008

### ARGUMENT
### 1

The case that most illustrate the actions of Dan Link as a prosecutor is "Zahrey v. Coffey" in the United States Court Of Appeals for the Second Circuit – 1999, 2000, docket No. 99-9119. The plaintiff asserts constitutional violations were the result of his deprivation of liberty without due process of law. The liberty deprivation is the 799 days in total he was confined, of which bail was revoked on October 30, 2006 and he remained in prison custody until April 26, 2008 with applied credits from custody before bail was made, he was release on Parole on April 26, 2008, **"see exhibit 1"** for the case of SCD195342 of which the parole was not discharged on or about June 28th of 2008, after the Superior Court of San Diego dismissed the case on June 16, 2008 based on the Remittitur issued by the Court of Appeal, the People's motion to dismiss the case was granted. The Court of Appeals of the Fourth Appellate District, Division One in case # D049993 reversed in full the judgment from case # SCD195342 on March 5, 2008 **"see exhibit 2"** of which was published on March 28, 2008, the Attorney General made a request for depublication on April 29, 2008 , in the California Supreme Court ,The reversal became final on May 28th, 2008 , **"see exhibit 3, "remittitur",** and on June 11, 2008 the California Supreme Court case # S163661 denied the request to depublish the case, and the case site is **"People v. Smith(2008) 161 Cal.App. 4th 622"**, also **"see exhibit 4, dismissal".**

As in Zahrey v. Coffey, supra, this case is identified as the right not to be deprived of liberty as a result of any government misconduct occurring in the investigative phase of a criminal matter, When a verdict

has been rendered in trial and then the same prosecutor in a retrial knowing what the verdict was an acquittal,

Dan Link was not presenting evidence of which he enjoys absolute immunity, for the fabricated evidence he used, there was no evidence to support it, it was contrary to the actual evidence, and therefore he was not presenting evidence as an advocate.

in his preparation for the second trial if he takes the evidence of the acquittal and from thereafter regards it, as, what was proven true is false and this prepares his whole case on the basis that the facts and issues of the decision of the acquittal, that the plaintiff did not drive a vehicle under the influence with his blood alcohol level of. 08 or more, and in order to for that decision of the jury to be true, he must have drank a large quantity of alcohol as testified after the collision were meaningless, is not role of advocate of a prosecutor preparing for a case, Dan link took what was personally known to him to be true and then kept this truth hidden from the jury, and then implied to the jury what he was keeping hidden is contrary to what he knew is true is fabricating the evidence, clearly violating the principles of Collateral Estoppel, "Double Jeopardy", as Dan links theory was if I don't charge the same charge that he was acquitted on the facts of the decision are not worthy, Dan Link throughout the initial pre-trial, trial, sentencing, and in his Respondent brief upon Appeal in his testimony and affidavits insisted that the plaintiff was driving under the influence with a blood alcohol level of. 08 or more and even in his testimony he stated that his theory was the plaintiff had been drinking the whole time, he knew he was violating rights, for in pre-trial it was argue by defense that based on his theory he would commit Double jeopardy but he didn't care, it was all the act of violating rights in his malicious prosecution, it is clear to see his theory and plan.

1. Since the Black jurors were a major part of the acquittal, he would ensure that no Blacks are on the second jury
2. He would ensure the second jury did not know about the acquittal and that even a first trial existed.
3. Then he would ensure that the jury is instructed that if prosecution has evidence that the plaintiffs blood alcohol level was over .08 they are to conclude that he was driving under the influence, based on the .17 breath test
4. He admitted he was not pursuing to prove to the jury that he was driving under the influence somewhere under .08, not to dis-regard that under vehicle code 23610 that if a defendant blood alcohol level is under .05 he is presume to be not driving under the influence, which would leave a very small margin of between .05 and .07, he knew that with the presumptive jury instructions along with the .17 test will reasonably guarantee him a guilty finding as proven for the jury deliberated for a total time of about 30 minutes. the charge of vehicle code 23152 (b) carries a presumption factor that if the blood alcohol is over .17 it is more reasonable that the defendant was driving under the influence, but the charge of vehicle code 23152 (a) requires a proof of impaired driving, of which Dan Link provided no proof of impaired driving.
5. He then used the fabricated evidence in trial
6. He was so egregious in his malicious prosecution that even after he had got the conviction, he fabricated nonexistent priors and fabricated existing priors by elevating them to a higher degree, to get the defendant the maximum punishment he could get, of which resulted in more time of

custody, all of his actions resulted in a deprivation of liberty without due process of law, and he committed other violations throughout.

An police Officer or detective is not protected when they fabricate evidence in an investigative capacity nor should a prosecutor be protected "Buckley III, 509 U.S. at 273(quoting Hampton v. Chicago, 484 F.2d 602 (7th Cir. 1973) from Zahrey v. Coffey, supra, no prosecutor by law is preparing for a case by fabricating evidence that he knows in true specifically by a jury trial he was in, and then falsifying it.

As in Zahrey v. Coffey, supra, ( the court conclude the right at issue in this case is appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity. Understood this way, we conclude that the right at issue is a constitutional right, provided that the deprivation of liberty of which Zahrey complains can be shown to be the result of Coffey's fabrication of evidence)

Also in Zahrey, (these alternative approaches could apply to most claims under the Due process Clauses, especially claims of a liberty deprivation allegedly resulting from misconduct occurring in a criminal trial. If, for example, a prosecutor places in evidence testimony known to be perjured or a trial judge makes a racially disparaging remark about a defendant, no deprivation of liberty occurs unless and until the jury convicts and the defendant is sentenced. The misconduct can be viewed as the cause of the ultimate deprivation of liberty.)

In the Second circuit since 1996 wrote Judge Jon O. Newman for the court. "Any prosecutor aware of [the case law] would understand that fabricating evidence in his investigative role violates the standards of due process and that a resulting loss of liberty is a denial of a constitutional right."

Dan Link in fabricating evidence that was known to him to be false by virtue of acquittal he was personally involved in, is an investigatory act, not an advocate for which he enjoys only qualified immunity as in Zahrey, and also a valid section 1983 claim is stated where a deprivation of liberty results from the initial act of obtaining evidence known to be false, at least in a case like Buckley and the pending case where the same person who fabricated the evidence used it.

It is firmly established that a constitutional right exist not to be deprived of liberty on the basis of false evidence fabricated by a government officer. See Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998)

Also when Officer Gonzales created false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to fair trial Ricciuti, 124 F.3d at 130. See also Malley, 475 U.S. at 346

It has also long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally. See Napue v. Illinois, 360 U.S. 264, 269 (1959); Pyle v. Kansas, 317 U.S. 213, 216 (1942); Mooney v. Holloman, 294 U.S. 112 (1935). In Zahrey- Although a prosecutor is protected by absolute immunity for his actions in presenting evidence at trial, see Imbler, 424 U.S. at

431, these cases serve to inform every prosecutor that his knowing use of false evidence is unconstitutional. any prosecutor aware of these cases would understood that fabricating evidence in his investigative role violate the standards of due process and that a resulting loss of liberty is a denial of a constitutional right. Dan link was not presenting evidence as he is allowed as an advocate, no evidence supported what he fabricated and use in trial, it was contrary

As in Zahrey, supra, the right is appropriately identified as the right not to be deprived of liberty as a result of any government officer's fabrication of evidence. That right was clearly established in 1996, when Coffey's alleged acts occurred, and it was also then well established that for purposes of actions under section 1983 and Bivens, a person is responsible for the natural consequences of his actions, Monroe, 365 U.S. at 187
It also cites all members of the Court recognized, however, that a prosecutor's conduct even after probable cause exists might be investigative. See id. At 274 n.5 (majority opinion); id. At 290 (Kennedy, J., concurring in part and dissenting in part).

The plaintiff assert Dan Link's usage of peremptory challenge to systematically exclude cognizable group " African Americans " distinguished by racial and ethnic grounds violated the ^the amend. Of the constitution right to an impartial jury, see Apodaca v. Oregon, U.S. Or. 1972, 92 S.Ct. 1628, 406 U.S. 404, 32 L.ed,2d 184, also People v. Wheeler, 1978, Batson v. Kentucky, 476 U.S. 19 (1986), Arizona V. Fulminante, 499 U.S. 279 (1991)

Dan Link's suppression of evidence favorable to defendant violates due process where evidence was material to guilt and the ending result was a deprivation of liberty; see Kyles v. Whitley (U.S. la 1995) 115 S.Ct. 1555, Brady v. Maryland (1963) 373 U.S.

As in Ayala v. KC Environment Health, 426 F.Supp.2d 1070 (E.D. Cal 2006) Collateral estoppels applies in section 1983, and United States v. D Angelo 138 F.2d 466 (1943), a rule of evidence is recognized which permits accused to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial, which the plaintiff was denied that right.

Dan Links actions were of a complaining witness, for he did not rely on facts, see Milstein v. Cooley (C.a9 Cal.2001) 257 F.3d 1004, also as in Cruz v. Kaui County CC.A9 (Hawaii) 2002, it is a 4th amendment right not to have a prosecutor personality attest to a false statement of a biased source with no investigation of the statement truth or falsity,

As in Kalina v. Flecther 522 U.S. at 131, 118 S.Ct. 502 (quoting U.S. Constitutional amendment IV, absolute immunity is not protected when the prosecutor as Dan Link did so , personally attested to the equivalent of an affidavit to the truth, declaring to be correct a certification, petitioner performed act that any competent witness might have performed, and thus was not entitled to absolute immunity, accord Morley v. Walker 175 F.3d 756, 760 (9th Cir. 1999), when the person who makes the constitutionally required oath or affirmation is a lawyer the only function that he performed in given sworn testimony id that of a witness, as Link did so with two Arizona DUI conviction that do not exist,

1993 is a misdemeanor not a felony, 1998 was a misdemeanor then dismissed, therefore is not protected by absolute immunity, and as in BishopPauite Tribe v. County of Inyo, 275 F.3d 893 (9th Cir. 2002) under California law elected County District Attorney was engaging in investigatory act , not prosecutorial act , as so in case at hand, thus the County could be had liable under 1983

## ARGUMENT II

The Plaintiff did not have a 1993 felony conviction and the conviction of case # CC074566 of 2001 is invalid and currently the case is in court , for in 1993 the criminal minutes change of plea, case # 163775 out of Santa Clara County, Superior Court, illustrates a misdemeanor conviction of a conditional Sentence no  probation officer, and no presentence investigation report  and a wobbler case under California wobbler statue not a felony, but had a erroneous court clerk prepared report contrary to the minutes **"see exhibit 5".**

The plaintiff did not have a 1998 Felony conviction **"see exhibit 6"**, case # 205489 out Santa Clara County was a misdemeanor, then in the illegal post-judgment  of 11/22/00 to designate it a felony was granted, then on March 2, 2001, the post-judgment of 11/22/00 was vacated and the case and case # 205489 was dismissed.  For the Texas parole and the two Arizona DUI convictions Dan Link testified to, I have no paper work for they never existed

## ARGUMENT III

Officer Gonzales shield for qualified immunity is lost, when he violated constitutional rights well established for fabricating evidence to mislead a magistrate/Judge or jury for enhancement of probable cause , that resulted in a deprivation of liberty without due process of law " Zamora v. City of Belen, 383 F.Supp.2d 1315 (D.N.M. 2005) civil right 1375, where an officer knows, or has reason to know that he has materially mislead a magistrate on the basis for finding of probable cause, as where a material omission and testimony is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, shield of qualified immunity is lost under section 1983.
 He fabricated evidence, admitted to errors, committed perjury under oath, and after the acquittal there no probable cause as nothing was enter as proof of impaired driving.
 As in "Montgomery v. Desimone (1998) 159 F.3d 120 Court of Appeal held that municipal Judge finding of probable cause for arrest did not automatically prevent arrestee from establish absence of probable cause for purpose of malicious prosecution " specifically as Officer Gonzales fabricated evidence all throughout pre-lim, and both trials.

Also "Gonzalez v. Bratton , 147 F.Supp.2d 180 (2001) punitive damages may be awarded in 1983 action when a defendants conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others, see Dean v. Earle (W.D. Ky 1994) 866 F.Supp

## ARGUMENT IV

Compensatory damages for malicious prosecution is asserted, after the acquittal "Centers v. Dollar Markets (Cal. 1950) 222 P.2d 136

The Plaintiffs asserts damage "Monetary" under Cal civil code section3333, A chain of causation, for the malicious action, the false imprisonment authorized or unauthorized would not have occurred, see Gill v. Epstein 44 Cal.Rptr 45 (1965) , general rule of damages in case of false imprisonment, that the person causing a wrongful imprisonment is liable for all natural and probable consequences

The plaintiff was sentenced with a statement of aggravation with numerous alleged false allegation that were fabricated is a violation see United State v. Tucker 92 S.Ct. 589 (1972), Townsend v. Burke 334 U.S. 736, 68 S.ct 1252, 92 led 1690

Under Cal Government code section 820 liability for injuries, a public employee is liable for injury caused by his act or omission to the same extent as a private person, see "Circuit Court of Appeal s, Second Circuit, "Knickerbocker Steamboat Co v. Cusack no. 100 (1995), Government code section 822.2, A public employee is liable for an injury, if he is guilty of actual fraud, corruption or actual malice.

I Craig Smith declare under the penalty of perjury of the laws of the state of California for the foregoing to be true and correct, executed this 9th Day of August 2008, in San Diego

Craig Smith

8 -10 -08

# CASES CITED
# ARGUMENTS

Page

1.  People v. Smith (2008) 161 Cal.App. 4th 622 ................................................................... 1

2.  Located on the Internet: "Zahrey v. Coffey", In the United States Court of Appeals for
    The Second Circuit – 1999, 2000, docket No. 99-9119 ........................................ 1,3,4

3.  Hampton v. Chicago, 484 F.2d 602 (7th Cir. 1973) ................................................ 3

4.  Scotto v. Almenas, 143 F.3d 105, 113 (2nd Cir. 1998) ............................................. 3

5.  Mailey, 475 U.S. at 346 ........................................................................................ 3

6.  Napue v. Illinois, 360 U.S. 264, 269 (1959) ............................................................ 3

7.  Pyle v. Kansas, 317 U.S. 213, 216 (1942) .............................................................. 3

8.  Mooney v. Holloman, 294 U.S. 112 (1935) ............................................................. 3

9.  Imbler, 424 U.S. at 431 ......................................................................................... 3

10. Monroe, 365 U.S. at 187 ...................................................................................... 4

11. Id. At 274 n.5 (majority opinion); at 290 kennedy .................................................. 4

12. Apodaca v. Oregon, U.S. Or. 1972, 92 S.Ct. 1628, 406 U.S. 404, 32 Led, 2nd 184 .............. 4

13. People v. Wheeler, 1978 ........................................................................................ 4

14. Batson v. Kentucky, 476 U.S. 19 (1986) ................................................................. 4

15. Arizona v. Fulminante, 499 U.S. 279 (1991) ........................................................... 4

16. Kyles v. Whitley (U.S. la 195) 115 S.Ct. 1555 ......................................................... 4

17. Brady v. Maryland (1963) 373 U.S. ...................................................................... 4

18. Ayala v. KC Environment Health, 426 F.Supp.2d 1070 (E.D. Cal 2006) ................... 4

Page

19. United States v. D Angelo 138 F.2d 466 (1943) ........................................................................ 4

20. Milstein v. Cooley (Ca.9 Cal 2001) 257 F.3d 1004 .................................................................. 4

21. Cruz v. Kaui County CC.A9 (Hawaii) 2002 ............................................................................. 4

22. Kalina v. Flecther 522 U.S. at 131, 118 S.Ct. 502 ................................................................. 4

23. Morley v. Walker 175 F.3d 756, 760 (9th Cir. 1999) ............................................................. 4

24. Bishop Pauite Tribe v. County of Inyo, 275 F.3d 893 (9th Cir. 2002) ..................................... 5

25. Zamora v. City of Belen, 383 F.Supp.2d 1315 (D.N.M. 2005) ................................................. 5

26. Montgomery v. Desimone (1998) 159 F.3d 120 ...................................................................... 5

27. Gonzalez v. Bratton, 147 F.Supp.2d 180 (2001) .................................................................... 5

28. Dean v. Earle (W.D. Ky 1994) 866 F.Supp ............................................................................ 5

29. Centers v. Dollar markets (Cal. 1950) 222 P.2d 136 .............................................................. 6

30. Buckley III, 509 U.S. at 273 .................................................................................................. 6

31. Gill v. Epstein 44 Cal.Rptr 45 (1965) .................................................................................... 6

32. United States v. Tucker 92 S.Ct. 589 (1972) ......................................................................... 6

33. Townsend v. Burke 334 U.S. 736, 69 S.Ct. 1252, 92 led 1690 ............................................... 6

34. Court of Appeals, Second circuit, Knickerbocker Steamboat Co. v. Cusack no.100 (1995)... 6

## Rules and Authorities

Page

Bivens ................................................................................................................................................... 4
Vehicle code 23152 (a) ........................................................................................................................ 2
Vehicle code 23152 (b) ........................................................................................................................ 2
Vehicle Code 23610 ............................................................................................................................. 2
Cal civil code 3333 ............................................................................................................................... 6
Government code 822.2 ....................................................................................................................... 6

## EXHIBITS

Page

1.  Department of Correction status sheet .................................................................... 1

2.  Court of Appeal Fourth District Division One "from website" reversal in full opinion........ 1

3.  Remittitur ................................................................................................................... 1

4.  Dismissal of case # SCD195342 in Superior Court County of San Diego ............................ 1

5.  1993 DUI case # 163775 out of Santa Clara County, criminal minutes, change of plea
    And Clerk prepared report, 2 documents .................................................................. 5

6.  1998, Post-Judgment of Case # 205489 on 11/22/00, designating a misdemeanor
    possession of firearm to a felony, and after motion to vacate, dismissal of case #
    205489 on March 2, 2001, 2 documents .................................................................. 5

7.  October 30, 2006, Abstract of judgment and pronounce of judgment of case #
    SCD195342, 3 documents .......................................................................................... 0

8.  Miscellaneous document of employment contract offer and approve as of October 20—
    October 23, 2006, verifying employment loss, more can be provided if needed
    4 documents ............................................................................................................... 0

```
        SUMMARY  TYPE-   D    RJD                        03/12/2008 21:35
```

| DC NUMBER | NAME | ETHNIC | BIRTHDATE |
|-----------|------|--------|-----------|
| T09268 | SMITH,CRAIG | BLA | 08/14/1961 |

| TERM STARTS | MAX REL DATE | MIN REL DATE | MAX ADJ REL DT | MIN ADJ REL DT |
|-------------|--------------|--------------|----------------|----------------|
| 11/07/2006 | 10/14/2009 | 04/26/2008 | 10/14/2009 | 04/26/2008 |

```
ASE TERM  3/00 + ENHCMNTS   1/00 = TOT TERM   4/00          | PAROLE PERIOD
                                                            | 3 YRS
```

```
PRE-PRISON + POST SENTENCE CREDITS
CASE     P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019    P2931 POST-SENT  TOT
```

| SCD195342 | | | | | | | |
|-----------|---|---|---|---|---|---|---|
| | 253 | | | | 126 | 7 | 386 |

```
PC296 DNA COMPLETED
```

| RECV DT/ CNT | COUNTY/ OFF-CODE | CASE DESCRIPTION | SENTENCE DATE | CREDIT CODE | OFFENSE DATE |
|--------------|------------------|-----------------|---------------|-------------|--------------|

```
CONTROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES):

--CONTROLLING CASE --
11/07/2006  SD   SCD195342            10/30/2006
              01 P667.5(B) PPT-NV                     1
  01 V23152
              DUI/WITHIN 10 YRS OF SPEC OTH           1   12/01/2005
```

| TRAN TYPE | DATE | END DATE LOG NUMBER | RULE NUMBER | | D A Y S | | |
|-----------|------|---------------------|-------------|---|---|---|---|
| | | | | ASSESS | LOST | REST | DEAD |

```
BEG 03/05/2001        ******BEG BAL******
CURRENT PC BALANCE;         0            CURRENT BC BALANCE;        0
```

# CALIFORNIA APPELLATE COURTS

## Case Information



| | |
|---|---|
| **Welcome** | |
| **Search** | **4th Appellate District Division 1** (Cases begin at D035601)     Change court |
| **E-mail** | Court data last updated: 05/24/2008 05:05 PM |
| **Calendar** | **Case Summary    Docket    Scheduled Actions    Briefs** |
| **Help** | **Disposition    Parties and Attorneys    Trial Court** |
| **Opinions** | |

## Disposition

**The People v. Smith**
**Case Number D049993**

| Description: | Reversed in full |
|---|---|
| Date: | 03/05/2008 |
| Status: | Final<br>The judgment is reversed. |
| Publication Status: | Signed Published |
| Author: | Haller, Judith |
| Participants: | McConnell, Judith (Concur)<br>Benke, Patricia (Concur) |
| Case Citation: | |

**Click here** to request automatic e-mail notifications about this case.

©2007 Judicial Council of California

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE


San Diego County Superior Court  -  Main
P.O. Box 120128
San Diego, CA 92112


RE:    THE PEOPLE,
         Plaintiff and Respondent,
         v.
         CRAIG SMITH,
         Defendant and Appellant.
         **D049993**
         **San Diego County No. SCD195342**


## * * * REMITTITUR * * *

I, Stephen M. Kelly, Clerk of the Court of Appeal of the State of California, for the Fourth Appellate District, certify the attached is a true and correct copy of the original opinion or decision entered in the above-entitled case on March 05, 2008, and that this opinion or decision has now become final.

_____ Appellant _____ Respondent to recover costs.
_____ Each party to bear own costs.
__✓__ Costs are not awarded in this proceeding.


Witness my hand and the seal of the Court affixed this    MAY 2 8 2008

STEPHEN M. KELLY

By: _____
              Deputy Clerk

cc: All Parties (Copy of remittitur only, Cal. Rules of Court, rule 8.272(d).)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE **SCD195342** DA **ABQ76901** BKG

JUDGE: **HON. ROBERT J. TRENTACOSTA**

CLERK: **JENY PARRA**

DATE **06-16-08** AT **1:30 p.m.** IN DEPARTMENT **11**

REPORTER: **BETTY J. ASHE, CSR # 4844**
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

**LINK, DANIEL F.,** Deputy District Attorney
By: **VASEL, MELISSA K.,** Deputy District Attorney
COUNSEL FOR THE PEOPLE

**THE PEOPLE OF THE STATE OF CALIFORNIA,**
PLAINTIFF,

vs.

**CRAIG SMITH,**
DEFENDANT.

**PRO PER,** Pro Per
COUNSEL FOR THE DEFENDANT

### VIOLATIONS

Ct(s):    Ct. 1  VC23152(a)
Enh(s):   Ct. 1  VC23550.5(a)
Pri(s):   PC667.5(b)

### REMITTITUR

The defendant is present.

### CUSTODY STATUS

### OTHER

Based on the Remittitur issued by the Court of Appeal, the People's motion to dismiss the case is granted.

Page: 1 of 1                          **DEFENDANT'S COPY**                  ROBERT J. TRENTACOSTA
                                                                            Judge of the Superior Court

⑤

5J.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA    CRIMINAL MINUTES, CHANGE OF PLEA

Case No. *16375*    PEOPLE V. *George Smith*

Date: *6-8-93*

Honorable *Daniel E. Creed*    Clerk *R. Crapo*

Reporter *Cathy Quezada*    Sheriff *R. Gager*

☒   Conditional Plea *1 yr cj ;*
*Lives in Gingham, after serving 6 mos cj*

*Christine Sturson*    *Mr. Patter, PD*
Deputy District Attorney    Counsel for Defendant

CHARGES:    *ct 1 - 23152 (A) CVC & 3 prs (f)*
*ct 2 - 23152 (B) CVC & 3 prs (f)*
*ct 3 - 14601.2 CVC  (misd) & 1 pr*
*ct 4 - 14601.1 CVC & 3 prs (misd)*

Matter regularly before the Court this date, counsel and defendant being present.

*Same Lighto, Pd. manager; Pd. 3 yr Parole;*
*Sg- Factual basis in the Min Transcript.*

After examination and permission by the Court, defendant's plea of Not Guilty is withdrawn, and
defendant enters a plea of ~~Guilty~~ *No Contest ct 2 ; ct 3*

*cts 1 & 4 Dismissed*
*referral*                                              *waived*
WHEREUPON, the ~~matter is referred~~ to the Adult Probation Officer for investigation and is ~~set~~
*sentenced* ~~for hearing~~ on *6-8-93*, in ☐ Master Sentencing Calendar,   OR
Courtroom *24*, at *9:30* *a.* m. *Creed*  ☐ Time waived for sentencing

===============================================================

ARMED ALLEGATION    ☐ Admitted    ☐ Denied    ☐ Dismissed

DEGREE    ☐ First    ☐ Second    ☐ Not Fixed    ☐ Hearing_____

PRIORS    ☒ Admitted    ☐ Denied    ☐ Mute    ☐ Stricken
☐ Hearing pending
*ct 3 pr 8-4-91*    Dates of priors *ct 2. 8-19-90; 11-22-90; 8-4-91;*
AGENCY    *43 (2)*    CUSTODY STATUS *6x*

CO-DEFENDANTS   (Including dispositions)_____

SS19 REV 8/77

**REPORT - INDETERMINATE SENTENCE, OTHER SENTENCE CHOICE**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SANTA CLARA**

COURT I.D.    **4 3 | | |**    BRANCH **HALL OF JUSTICE**

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT: **CRAIG SMITH**
AKA:

☒ PRESENT    ☐ NOT PRESENT

CASE NUMBER(S) **163775** -A / -B / -C / -D / -E

REPORT OF:
☐ DEATH SENTENCE    ☐ AMENDED REPORT
☐ INDETERMINATE SENTENCE
☒ OTHER SENTENCE CHOICE

DATE OF HEARING (SENTENCING) **06-08-93**    DEPT. NO. **35**    JUDGE **DANIEL E. CREED**    CLERK **P. COOPER**

REPORTER **CATHY LINCOLN**    COUNSEL FOR PEOPLE **CHRISTINE HUDSON**    COUNSEL FOR DEFENDANT **CARL BEATTY, P.D.**    PROBATION NO. OR PROBATION OFFICER **WAIVED**

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTED BY |
|---|---|---|---|---|---|---|
| 2 | VC | 23152(B)& 3 Prs Driv w/ .08% B.A. or more | | 93 | 06-08-93 | X |

2. ENHANCEMENTS (charged and found true) TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.

| Count | Enhancement | Enhancement | Enhancement | Enhancement | Enhancement |
|---|---|---|---|---|---|
| | | | | | |

3. ENHANCEMENTS (charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER.

| Enhancement | Enhancement | Enhancement | Enhancement | Enhancement |
|---|---|---|---|---|
| Enhancement | Enhancement | Enhancement | Enhancement | Enhancement |

4. ☐ Defendant was sentenced TO DEATH on counts _____

5. ☐ Defendant was sentenced to State Prison for an indeterminate term:
   A. ☐ For LIFE, or a term such as 15 or 25 years to life, WITH POSSIBILITY OF PAROLE on counts _____
   B. ☐ For LIFE WITHOUT the possibility of parole on counts _____
   C. ☐ For other term prescribed by law on counts _____ (Life Terms on "A" and "B".)

6. ☐ Counts _____ are alternate felony/misdemeanors and were DEEMED MISDEMEANORS.)
   A term in jail ☐ was ☐ was not ordered.

7. ☒ For counts **2 & 3** the defendant was placed on FELONY probation.
   A. (1) ☐ Sentence announced and execution of sentence was suspended; or
      (2) ☒ Imposition of sentence was suspended.
   B. ☒ Conditions of probation included    ☒ Jail Time    ☒ Fine

8. ☐ Other Dispositions
   A. ☐ Defendant was committed to California Youth Authority.
   B. ☐ Proceedings suspended, and defendant was committed to California Rehabilitation Center.
   C. ☐ Proceedings suspended, and defendant was committed as a Mentally Disordered Sex Offender.
   D. ☐ Proceedings suspended, and defendant was committed as a mentally incompetent.

☒ Formal Probation. ☒ Granted **3** years ☐ For period co-terminous with Jail Sentence _____ ☐ Defendant committed to CYA ☐ Advised of Appeal Right

☒ County Jail **12 Mos.** with credit for time served of **163** days ☐ Consecutive/Concurrent ☐ Pre-Processing date _____ at _____ M
**After serving 6 mos. may complete sentence in a Residential Alcohol Program approved by Adult Probation Officer.**

☐ Jail sentence stayed until _____ M. ☐ Review date _____ in Department _____

☒ Jail sentence suspended pending completion of Common, Altern./Elect. Monit. Prgm. _____ ☐ Perform _____ hours catconsp. common. service work _____

☒ Restitution Fine $**200** ☐ Drug Program Fee $ _____ ☒ Alcohol Education Fee $**50** ☐ Fine $**500** ☐ Penalty $**850** ☐ Concurrent w/substance at $ _____ / day

☐ Lab Fee $ _____ ☐ Attorney Fees ordered $ _____ ☐ APO Rept. Fee $ _____ ☐ Probation Cost _____ And ☐ other Fees _____

☐ _____ Prohibiting ☒ no Alcohol use where sold ☐ Complete Alcohol/Drug Prgm. _____ ☐ Release to representative _____

☒ Submit to search/testing ☐ Not own/possess deadly/dangerous weapons ☐ Weapon ordered destroyed. ☐ Restitution _____ ☐ Empl/Trg _____

☒ Driver's License suspended/revoked **term prescribed by law** ☐ Restricted _____ ☐ Complete Multiple Offender Prgm/First Offender

☒ OTHER ORDERS: **Defendant advised that he must complete Multiple Offender Program before he can get a driver's license. Not drive without license and insurance.**

Criminal Proceedings having been previously suspended ☐ Matter submitted on report of Dr. _____ ☐ Court finds Defendant ☐ a Narcotic Drug Addict
☐ Incompetent ☐ Insane Defendant committed to ☐ California Rehabilitation Center under ☐ 3051 WI ☐ 3050 WI _____ ☐ State Hosp. ☐ 1370PC ☐ 1026PC

On Motion of the ☐ People ☐ Defendant ☒ Court orders **Cts. 1 & 4** dismissed.

SUPERIOR COURT
190 WEST HEDDING S. _ }
SAN JOSE, CA 95110

| | |
|---|---|
| CASE NO. | 203 97<br>98007280 |
| CEN | |

PEOPLE VS.
CRAIG SMITH

DATE: 11/22/2000   9:00 A.   DEPT. 24
08/14/1961   CAC5935148

A. 39939        STEVENSON COMMON
FREMONT, CA 94538

CLERK: D. SEPULVEDA        CWH046 M

JUDGE: HON. LEON P. FOX

HEARING: HEARING ON MOTIONS

AGENCY: SJ-04313-2860 -RAMIREZ

REPORTER: D. WALLER

STATUS: D-SET -10000        TW    Y

ATTY. LEMPERT, DENNIS   D.A. D. FEHDERAU

APO C. FAZO        SUPO# P52

CHARGES: M(001)PC12021(A)(1)

*no fill*

**NEXT APPEARANCE DATE(S)** 1-3-01    9:00  Lempert    Assigned to: _____

- [x] Defendant Present  [ ] Not Present      [ ] Attorney Not Present  [x] Present Lempert
- [x] WFA  [ ] Arr'd
- [ ] 977 Waiver  [ ] on file  [ ] Filed @ this time
- [ ] T/W  [ ] TNW  [ ] T/W W/D  [ ] for Sent
- [ ] Pleads NG  [ ] NGBRI  [ ] Entered by Court
- [ ] Other _____
- [ ] Priors  [ ] Alleg/Enh  [ ] Admit  [ ] Denied
- [ ] Stip Complaint serve as Information
- [ ] Ref/Appt Pub Def  [ ] Conf Decl  [ ] Conf App
- [ ] Waives _____
- [ ] Proof Of _____

- [ ] Arr  [ ] Plea  [ ] ID Cnsl  [ ] Prob/Sent      [ ] Interp _____
- [ ] Bail/OR Hrg  [ ] Rect Dr Rpt  [ ] Diversion      [ ] Notice Eligibility Filed Cnts _____
- [ ] Prelim  [ ] TSET  [ ] PT Conf  [ ] S/B MTC      [ ] Diversion  [ ] Granted  [ ] Denied  [ ] Pay fee
- [ ] Jury  [ ] Court trial  [ ] Peo/Def Waive Jury      Bail  [ ] Exon  [ ] Forfeited Bond # _____
- [ ] Advised NGBRI  [ ] Doubt Decl 1368PC      [ ] Forfeiture set aside  [ ] Bail Reinstated
- [ ] Crim Proc  [ ] Susp  [ ] Reinst  [ ] Term      [ ] $ _____ costs by _____
- [ ] Drs _____  [ ] Appt _____      OR/SOR  [ ] Revoked  [ ] Reinstated
- [ ] Subm on rept  [ ] Found _____      [ ] B/W Set Aside  [ ] Recalled  [ ] Reassump Filed
- [ ] Ref'd _____  [ ] Max Term _____      [ ] B/W Ordered, Bail _____  [ ] B/W Stayed
- [ ] Committed _____      [x] Hrg on Motion by DA
        [ ] Motion  [ ] Den  [ ] Granted  [ ] O/C  [ ] Subm

- [ ] Prelim Waived  [ ] Certified to Superior Court _____  [ ] Held to answer

**PLEA**  [ ] Amended on face
- Conditions  [ ] None  [ ] No State Prison  [ ] Include Viol/Prob
- [ ] Jail/Prison Term of _____
- [ ] Dismissal/Striking _____
- [ ] Advised  [ ] Max Pen  [ ] Parole/Probation  [ ] Appeal  [ ] Immig  [ ] Registration PC290/HS11590/PC457.1  [ ] Future serious felony prior
- [ ] Waives Constit Rights  [ ] Written Waiver filed  [ ] PC17 Red  [ ] Granted  [ ] Denied  [ ] Arbuckle Waiver  [ ] Harvey Stip
- [ ] Pleads  [ ] Guilty  [ ] Nolo Contendere to following viol & admits enhs (see below)  [ ] Factual Basis Found  [ ] Finding stated
- [ ] Bunnell Subm on Prelim Evid/Trans  [ ] Court finds Deft
- [ ] Ref'd to Prob Dept  [ ] Waives Formal Report  [ ] Waives referral  [ ] Probation Denied

*CJIC to correct ct 1 by order*
*Court to felony -*
*plea Aug 9 - for sent 10/1*
*matter can not be*
*reduced to felony*

**PROB**  [ ] Execution  [ ] Imposition of sentence suspended for probation period

**FINES**

- [ ] Court  [ ] Formal Probation Granted _____ days/mos/years  [ ] Prob term on release      Pay to  [ ] Court  [ ] DOR  [ ] AR Fee by _____
- [ ] Report to APO & maintain contact as directed  [ ] w/n 3 days  [ ] upon release      Count _____ $ _____  +PA $ _____
- [ ] Court finds Violation/No Violation  [ ] Deft Admits Violation of Probation      Count _____ $ _____  +PA $ _____
- [ ] Prob Reinst/Continued Original Terms & Conditions  [ ] Prob Term No further Penalties      [ ] Concur/Consec w/Prison/Jail @ _____ /day
- [ ] Revoked  [ ] Modified  [ ] Extended to _____      [ ] purs to HS11350(d)
- [ ] Complete Commun Altern Program  [ ] Perform _____ hrs Volunteer Work      R/F $ _____     ASF $ _____
- [ ] Submit Search/Testing  [ ] Educ/Voc Trg/Empl  [ ] DVPO to issue  [ ] Advised PC12021      DPF $ _____     CJAF $ _____
- [ ] Not own/possess deadly weapons  [ ] Weapon ordered destroyed      LAB $ _____
- [ ] No contact w/victim or family/co-defts unless appr by APO  [ ] No pager/port comm device      AEF $ _____     PINV $ _____ max
- [ ] No alco/ drugs or where sold  [ ] Restitution _____      Atty $ _____     PSUP $ _____ /mo max
- [ ] Complete _____ cnsl/prgm      Total Amount Due $ _____
- [ ] Not drive w/o valid lic & ins  [ ] license surrendered  [ ] Reissue DL      [ ] Ref'd to DOR to determine ability to pay
- [ ] Partic in  [ ] Delete  [ ] Reinst  [ ] 1st Offender/Mult Off Prgm  [ ] Rept w/n _____      [ ] Crt finds deft  [ ] able  [ ] not able to pay
- [ ] Lic susp/rev/restr for _____ to, from, during  [ ] Work  [ ] Alco prgm  [ ] VC      [ ] Payments granted/modified @ $ _____ /mo
- [ ] Ignit Interlock Dev  [ ] ordered _____ yrs  [ ] waived Veh  [ ] impound  [ ] Not impounded      Commencing _____
- [ ] Gang orders: No insignia, tattoos, assoc w/gang members, etc.  [ ] PC 290.2 (DNA TEST) Ordered  [ ] PC 1202.1 (AIDS TEST) Ordered  [ ] Aids Education Program
- [ ] Other _____

**CONVICTION / JAIL / PRISON**

| Count | F/M | Violation | Trm/Yrs | Enhancement | Yrs/S | Prison | County Jail |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

- [ ] See Attachment Page for additional charges      [ ] Sentence Deemed Served  [ ] Ordered to report to Local Parole

**PRIORS Alleged & Found True/Admitted**

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ act + _____ (4019) = _____ Total days

TOTAL TERM _____

VIOLATION DATE: 02/27/1998

- [ ] Advised _____ years parole  [ ] Appeal rights      Total this case  [ ] Consec  [ ] Concur to _____
- [ ] Straight time  [ ] Weekends  [ ] Weekend Work  [ ] PC1209 Fee Ordered/Waived  [ ] EMP rec  [ ] Eligible / not elig EMP/PSP/WF/CoParole
- [ ] Stay Surrender/Transp to _____ @ _____ M or sooner  [ ] Pre-process _____ AM/PM
- [ ] of CJ susp  [ ] Release to _____  [ ] only 1 rel-PC4018.6
- [ ] manded into Cust  [ ] No Bail Allowed  [ ] Bail  [ ] Set @  [ ] Increased  [ ] Reduced to $ _____
- [ ] ains released on  [ ] Release @ this time on  [ ] OR  [ ] SOR  [ ] Bail

Twu

B    SUPERIOR COURT                                          CASE NO.        205489
     190 WEST HEDDING STREET                          CEN                   98007280
     SAN JOSE, CA 95110                     DATE      03/02/2001  9:00 AM  DEPT.  25
PEOPLE VS.                                            08/14/1961 CAC5935148
L.K.A.    CRAIG  SMITH
     39939      STEVENSON COMMON            CLERK     D.SEPULVEDA            CWH046 M
     FREMONT, CA 94538                      HEARING   HEARING ON MOTIONS
JUDGE     HON. LEON P. FOX                  AGENCY    SJ-04313-2860 -RAMIREZ
REPORTER  D.WALLER                          STATUS    I-SET -NBA                  TW  Y
DEF. ATTY.  HARMON            D.A.  K·STORTON          APO                   SUPO: P527
CHARGES   F(001) PC12021(A)(1)

---

**NEXT APPEARANCE DATE(S)** _____

☑ Defendant Present  ☐ Not Present          ☐ Attorney Not Present  ☑ Present   *HARMON by LIANTDES* Assigned
☐ WFA  ☐ Arr'd                              ☐ Arr  ☐ Plea  ☐ ID Cnsl  ☐ Prob/Sent     ☐ Interp___
☐ 977 Waiver  ☐ on file  ☐ Filed @ this time  ☐ Bail/OR Hrg  ☐ Rect Dr Rpt  ☐ Diversion   ☐ Notice Eligibility Filed Cnts___
☐ T/W  ☐ TNW  ☐ T/W W/D  ☐ for Sent        ☐ Prelim  ☐ TSET  ☐ PT Conf  ☐ S/B MTC    ☐ Diversion  ☐ Granted  ☐ Denied  ☐ Pay fee
☑ Pleads NG  ☐ NGBRI  ☐ Entered by Court    ☐ Jury  ☐ Court trial  ☐ Peo/Def Waive Jury    Bail  ☐ Exon  ☐ Forfeited Bond #___
☐ Other ___                                 ☐ Advised NGBRI  ☐ Doubt Decl 1368PC   ☐ Forfeiture set aside  ☐ Bail Reinstated
☐ Priors  ☐ Alleg/Enh  ☐ Admit  ☐ Denied   ☐ Crim Proc  ☐ Susp  ☐ Reinst  ☐ Term   ☐ $_____ costs by___
☐ Stip Complaint serve as information       ☐ Drs _____  ☐ Appt ___   OR/SOR:  ☐ Revoked  ☐ Reinstated
☐ Ref/Appt Pub Def  ☐ Conf Decl  ☐ Conf App   ☐ Subm on rept  ☐ Found ___   ☐ B/W Set Aside  ☐ Recalled  ☐ Reassump Filed
         ☐ Relieved  ☐ Entered              ☐ Ref'd _____  ☐ Max Term ___   ☐ B/W Ordered, Bail *set aside plea*  ☐ B/W Stayed
☐ Waives ___                                ☐ Committed ___              ☑ Hrg on Motion ___
☐ Proof Of ___                                                          ☑ Motion  ☐ Den  ☒ Granted  ☐ O/C  ☐ Subm

---

☐ Prelim Waived  ☐ Certified to Superior Court       ☐ Held to answer ___
**PLEA**  ☐ Amended on face                                   *plea WITHDRAWN*
          Conditions  ☐ None  ☐ No State Prison  ☐ Include Viol/Prob      *Judgment VACATED*
☐ Jail/Prison Term of ___ *nda ct1 too*                      ☐ @ this time  ☐ Subm time of Sent
☑ Dismissal/Striking ___
☐ Advised  ☐ Max Pen  ☐ Parole/Probation  ☐ Appeal  ☐ Immig  ☐ Registration PC290/HS11590/PC457.1  ☐ Future serious felony prior
☐ Waives Constit Rights  ☐ Written Waiver filed  ☐ PC17 Red  ☐ Granted  ☐ Denied  ☐ Arbuckle Waiver  ☐ Harvey Stip ___
☐ Pleads  ☐ Guilty  ☐ Nolo Contendere to following viol & admits enhs (see below)  ☐ Factual Basis found  ☐ Findings stated
☐ Bunnell Subm on Prelim Evid/Trans  ☐ Court finds Deft
☐ Ref'd to Prob Dept  ☐ Waives Formal Report  ☐ Waives referral  ☐ Probation Denied
**PROB**  ☐ Execution  ☐ Imposition of sentence suspended for probation period     **FINES**
☐ Court  ☐ Formal Probation Granted ___ days/mos/years  ☐ Prob term on release   Pay to  ☐ Court  ☐ DOR  ☐ AR Fee by___
☐ Report to APO & maintain contact as directed  ☐ w/n 3 days  ☐ upon release   Count  $_____  +PA $___
☐ Court finds Violation/No Violation  ☐ Deft Admits Violation of Probation    Count  $_____  +PA $___
☐ Prob Reinst/Continued Original Terms & Conditions  ☐ Prob Term No further Penalties   ☐ Concur/Consec w/Prison/Jail @ _____ /day
☐ Revoked  ☐ Modified  ☐ Extended to ___                                    ☐ purs to HS11350(d)
☐ Complete Communi Altern Program  ☐ Perform ___ hrs Volunteer Work   R/F  $_____  ASF  $___
☐ Submit Search/Testing  ☐ Educ/Voc Trg/Empl  ☐ DVPO to issue  ☐ Advised PC12021   DPF  $_____  CJAF  $___
☐ Not own/possess deadly weapons  ☐ Weapon ordered destroyed         LAB  $___
☐ No contact w/victim or family/co-defts unless appr by APO  ☐ No pager/port comm device   AEF  $_____  PINV  $_____ max
☐ No alco/drugs or where sold  ☐ Restitution ___                     Atty  $_____  PSUP  $_____ /mo max
☐ Complete ___ cnsl/prgm                                              Total Amount Due $___
☐ Not drive w/o valid lic & ins  ☐ license surrendered  ☐ Reissue DL ___   ☐ Ref'd to DOR to determine ability to pay
☐ Partic in  ☐ Delete  ☐ Reinst  ☐ 1st Offender/Mult Off Prgm  ☐ Rept w/n ___   ☐ Crt finds deft  ☐ able  ☐ not able to pay
☐ Lic susp/rev/restr for ___ to, from, during  ☐ Work  ☐ Alco prgm  ☐ VC   ☐ Payments granted/modified @ $_____ /mo
☐ Ignit Interlock Dev  ☐ ordered ___ yrs  ☐ waived Veh  ☐ Impound  ☐ Not Impounded   Commencing ___
☐ Gang orders: No insignia, tattoos, assoc w/gang members, etc.  ☐ PC 290.2 (DNA TEST) Ordered  ☐ PC 1202.1 (AIDS TEST) Ordered  ☐ Aids Education Program
Other ___

---

**CONVICTION / JAIL / PRISON**

| Count | F/M | Violation | Trm/Yrs | Enhancement | Yrs/S | Prison | County Jail |
|-------|-----|-----------|---------|-------------|-------|--------|-------------|
|       |     |           |         |             |       |        |             |
|       |     |           |         |             |       |        |             |
|       |     |           |         |             |       |        |             |
|       |     |           |         |             |       |        |             |

☒ See Attachment Page for additional charges    ☐ Sentence Deemed Served    ☐ Ordered to report to Local Parole
**PRIORS** Alleged & Found True/Admitted

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|
|             |       |             |       |             |       |             |       |             |       |       |

CTS = ___ act + ___ (4019) = ___ Total days          **TOTAL TERM** ___

☐ Advised ___ years parole  ☐ Appeal rights     Total this case ___  ☐ Consec  **VIOLATION DATE: 02/27/1998**
☐ Straight time  ☐ Weekends  ☐ Weekend Work  ☐ PC1209 Fee Ordered/Waived  ☐ EMP. rec ___ ☐ Eligible / not elig EMP/PSP/WF/CoParole
☐ Stay Surrender/Transp to ___ @ _____ sooner  ☐ Pre-process ___ AM/PM
☐ Bal of CJ susp  ☐ Release to ___ *on this case only*          ☐ only 1 rel-PC4018.6
☐ Remanded into Cust  ☐ No Bail Allowed  ☐ Bail  ☐ Set @ ___ ☐ Increased  ☐ Reduced to $___
☐ Remains released on  ☒ Release @ this time on  ☐ OR  ☐ SOR  ☐ Bail
CLERK OF THE ABOVE ENTITLED COURT BY                                         DEPUTY CLERK